## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **3:22-CR-72** |
| | : | **(JUDGE MARIANI)** |
| **STEVEN WONG,** | : | |
| | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Steven Wong's "Motion to Dismiss for Violation of Defendant's Right to Speedy Trial" (Doc. 213). Defendant's motion requests dismissal of the above-captioned action against him "as a consequence of the violation of Wong's Sixth Amendment Right to a Speedy Trial and his right to a speedy trial under the Speedy Trial Act." (Doc. 214, at 1). The Government timely filed a brief in opposition to Defendant Wong's motion, to which Defendant filed a Reply brief (Doc. 252). Defendant's Motion to Dismiss is now ripe for resolution. For the reasons that follow, Defendant's Motion to Dismiss will be granted in part and denied in part.[1]

---

[1] The Court scheduled trial in this case on March 22, 2024 to commence on June 10, 2024 (Doc. 200). Defendant Wong thereafter filed the present Motion to Dismiss on April 18, 2024. The Government filed a brief in opposition to Defendant's Motion (Doc. 217) on May 2, 2024. Six days later, and only one month prior to trial, the Government filed a Second Superseding Indictment (Doc. 218) which contained the following changes to the First Superseding Indictment, as explained by the Government:

a. Count 2 of the Second Superseding Indictment alleges an Attempted Interference with Commerce by Robbery, instead of a completed Interference with Commerce by Robbery. In pertinent part, Count 2 of the Second Superseding Indictment now reads, "in that the

## II. PROCEDURAL HISTORY

Defendant Wong's motion arises as the result of three separate criminal cases that have been filed against him, beginning in 2020 (*Wong I, Wong II,* and *Wong III*).  Defendant asserts that all three cases must be considered together because "[e]ven though by the end

―――――――――――――――

defendants did unlawfully attempt to take and obtain property ..." This differs from the previously filed Superseding Indictment which reads, in pertinent part, "in that the defendants did take and obtain property ..."

b. Count 3 of the Superseding Indictment is not included in the Second Superseding Indictment, as Attempted Interference with Commerce by Robbery is not a "crime of violence," for purposes of 18 U.S.C. 924(c). *United States v. Taylor*, 596 U.S. 845 (2022).

c. The language in Counts 4 and 5 of the Second Superseding Indictment , 18 U.S.C. 924(c), reads, in pertinent part, "did knowingly brandish, carry, and use firearms, including a machinegun, during and in relation to, and possess firearms, including a machinegun, in furtherance of, a crime of violence ..." This differs from the language found in Counts 5 and 6 of the previously filed Superseding Indictment, which read, in pertinent part, "did knowingly brandish, carry, and use firearms, including a machinegun, during and in relation to a crime of violence in furtherance of a crime of violence ..."

d. Co-defendant Rachel Lysakowski no longer appears on the Second Superseding Indictment has she has pleaded guilty to Count 1 of the Superseding Indictment.

[ ] This Second Superseding Indictment adds the following charges and defendants: Count 6, 18 U.S.C. 924(O), Firearms Conspiracy, for defendants Joushton Rodriguez, Solomon Rodriguez, Steven Wong, and Mohammed Zeidan.

(Doc. 220). This Court will not entertain any argument that the filing of the Second Superseding Indictment following the filing of Defendant's Motion to Dismiss renders moot Defendant's Motion, nor does the Government assert otherwise.  Rather, while the Court bases its analysis in this memorandum opinion by reference to the First Superseding Indictment and the counts as enumerated therein, the Court's decision herein applies to the First Superseding Indictment and extends to the relevant counts of the Second Superseding Indictment, *i.e.* those that remain substantively unchanged.  To find otherwise would render toothless any sanction which results from a court's grant of a defendant's motion to dismiss and encourage the Government to simply continuously file superseding indictments in response to any motion to dismiss by a defendant asserting a statutory or constitutional speedy trial violation.  The extension of the Court's disposition of Wong's present Motion to Dismiss to the relevant counts set forth in the Second Superseding Indictment further allows this case to move forward expeditiously where, if Wong were forced to file a second Motion to Dismiss due to the Government's filing of a Second Superseding Indictment, the result would necessarily be the same as to the relevant counts.

of 2020 the Government was aware of all the allegations set forth in all three Wong

indictments, it spent three years piecemealing prosecution through filing separate

Indictments all related to one another." (Doc. 214, at 11).[2]

Because the parties are intimately familiar with the facts of all three cases, the Court

will begin with only a brief recitation of the relevant procedural history of the three *Wong*

cases herein and, where necessary, will engage in a more thorough description of the

procedural history of the individual cases at later times in this memorandum opinion.

### United States v. Wong – 3:20-cr-310 (*Wong I*) [3]

On December 9, 2020, Defendant Wong was indicted in *United States v. Wong*,

---

[2] For reasons not clear to this Court, at no time did the Government mark any of these three cases as being related, therefore resulting in *Wong II* and *Wong III* being assigned to, and presided over, by different U.S. District Court Judges, specifically, while the undersigned was assigned *Wong I* and *Wong III*, a different U.S. District Court Judge was assigned *Wong II*. It is evident that prior counsel for the Government engaged in a sloppy and piecemeal prosecution of Wong over the course of the three criminal cases, and a number of the issues of which Wong now complains could have been mitigated had the factual allegations underlying *Wong II* and *Wong III* been more thoroughly investigated and, at minimum, had there been a notation for the Clerk's Office on the Criminal Cover Sheet at the time *Wong III* was filed, that it was related to *Wong II*.

[3] Although the procedural history of *Wong I* is relevant to provide an overview of the prosecutions against Wong in the Middle District of Pennsylvania, Defendant does not assert that any time from Wong I should be counted against the Government in calculating the length of the delay for purposes of the Speedy Trial Act or Sixth Amendment. (*See* Doc. 214, at 11 ("Because *Wong II* and *Wong III* charge an identical conspiracy, the speedy trial clock in this case begins running from the inception of *Wong II*. As such, at the time that trial is scheduled to begin in this case, nine-hundred-and-ninety-nine (999) days of delay will have elapsed, with six-hundred-and-thirty-six (636) of those days of delay being attributed to the Government. As detailed herein, Wong has been prejudiced because of this delay. Therefore, this prosecution runs afoul of both the Sixth Amendment Right to a Speedy Trial and the Speedy Trial Act, and the only remedy to cure the same is to dismiss the Superseding Indictment with prejudice."); *id*. at 15 ("The Constitutional speedy trial clock in this matter runs from the September 2021 filing of the *Wong II* Indictment."); *id*. at 30 ("The Indictment against Defendant must be dismissed for violation of the speedy trial rule. At the time of trial, nine-hundred-ninety-nine (999) days will have passed since Defendant's initial court appearance on *Wong II*.").

3:20-cr-310 (hereinafter "*Wong I*") for Kidnapping (Count 1), in violation of 18 U.S.C. §

1201(a)(1), and Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §

922(g)(1) (Count 2).  Defendants Cornelius Green, William Murphy, and Odaliz Wong were

named in the same indictment.  (3:20-cr-310, Doc. 1).

Defendant Wong was arraigned before Chief Magistrate Judge Mehalchick on March

23, 2021, after having been transferred to the Middle District of Pennsylvania from the

Eastern District of North Carolina. (*See id.* at Docs. 16, 53, 54).  Following a three-day jury

trial, Wong was acquitted of the charge of Kidnapping (Count 1) on September 28, 2022 (*id.*

at Doc. 245) and, one month later, he pleaded guilty to Possession of a Firearm by a

Prohibited Person (Count 2) (*id.* at Doc. 258).  On February 23, 2023, this Court sentenced

Wong to a term of imprisonment of 41 months on Count 2 of the Indictment followed by a 3-

year term of supervised release. (*Id.* at Doc. 293).

### United States v. Wong – 3:21-cr-271 (*Wong II*)

On September 15, 2021, a federal grand jury indicted Wong in *United States v.

Wong*, 3:21-cr-271 (hereinafter "*Wong II*"), along with four co-defendants, Eric LaSalle,

Joshua Marsh, Joushton Rodriguez, and Solomon Rodriguez.  The Indictment charged

Conspiracy to Interfere with Commerce by Robbery (Count 1), in violation of 18 U.S.C. §

1951, Interference with Commerce by Robbery (Count 2), in violation of 18 U.S.C. § 1951,

and Use of a Firearm in Furtherance of a Crime of Violence (Count 3), in violation of 18

U.S.C. § 924(c)(1)(A).  (3:21-cr-271, Doc. 1).  Wong was thereafter superseded on January

19, 2022, wherein the charges remained the same but an additional defendant, Alarick Batista, was added to the indictment (*id.* at Doc. 50).  A Second Superseding Indictment was filed on February 22, 2023 to add the word "machinegun" to Count 3 (*id.* at Doc. 157).

Following arraignment of the defendants on the Second Superseding Indictment, the Court scheduled trial as to Wong, Marsh, Batista, and S. Rodriguez to commence on March 27, 2023. (3:21-cr-271, Doc. 175).[4]  However, on March 24, 2023, the Court entered a docket annotation stating: "The trial scheduled to begin on Monday, March 27, 2023 has been continued at the oral concurred in request of the Gov't based on Defendant, Joushton Rodriguez having been apprehended in the Eastern District of PA. In the interest of justice, the Court has granted the request of the Gov't. New date will be forthcoming." (*Id.*, at Dkt. annotation of March 24, 2023).  On April 19, 2023, Defendant J. Rodriguez having been arraigned, the Court scheduled trial as to Defendants Wong, J. Rodriguez, and S. Rodriguez to commence on June 26, 2023. (*See id.*, Docs. 222, 223).[5]

On June 21, 2023, the Court in *Wong II* entered another docket annotation, which stated that "[t]he trial scheduled to begin on Monday, June 26, 2023 has been continued. New date will be forthcoming." (3:21-cr-271, Dkt. annotation of June 21, 2023).  No further trial scheduling Order was entered on the record. On November 20, 2023, the Government

---

[4]  At this time, Defendant Joushton Rodriguez had not yet been apprehended.

[5] Prior to the re-scheduling of trial, signed Plea Agreements had been filed of record for Defendants LaSalle, Marsh, and Batista had of record. (3:21-cr-271, Docs. 178, 179, 196).

filed a "Motion to Dismiss Second Superseding Indictment pursuant to Fed. R. Crim. P. 48(a) requesting dismissal of the Second Superseding Indictment as to Defendants Wong, J. Rodriguez, and S. Rodriguez. (*Id*. at Doc. 244). The motion was granted by the Court that same day (*id*. at Doc. 245).

Over the course of 21 months, from the date of the first Indictment on September 15, 2021, until the Court's final order continuing trial on June 21, 2023, Defendant Wong and his co-defendants filed no fewer than 28 motions, including but not limited to, motions for extensions of time, motions to suppress, motions *in limine*, and motions for new counsel; this included at least 12 substantive and procedural motions by Wong himself (*see e.g., id*. at Docs. 45, 47, 89, 93, 97, 127, 128, 136, 137, 146, 190, 198).

***United States v. Wong* – 3:22-cr-72 (*Wong III*)**

On February 23, 2022, the grand jury returned an Indictment against Joushton Rodriguez, Solomon Rodriguez, and Cornelius Green in *United States v. Wong*, 3:22-cr-72 (hereinafter "*Wong III*"). The Indictment charged Defendants with Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951 (Count 1) and Use of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2).

On June 21, 2023, Wong was charged for the first time in criminal action 3:22-cr-72 when the grand jury returned a Superseding Indictment charging Wong, J. Rodriguez, S. Rodriguez, Mohammed Zeidan, and Rachel Lysakowski, as follows:

o  Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. §

1951, against J. Rodriguez, S. Rodriguez, Wong, Zeidan, and Lysakowski,

beginning on July 22, 2020 and continuing through September 2020 (Count 1).

o  Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951,

against J. Rodriguez, S. Rodriguez, Steven Wong, and Zeidan, on or about

August 29, 2020 (Count 2).

o  Use of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C.

§ 924(c)(1)(A) against J. Rodriguez, S. Rodriguez, Wong, and Zeidan, on or

about August 29, 2020 (Count 3).

o  Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951,

against J. Rodriguez, S. Rodriguez, and Wong, on or about August 30, 2020

(Count 4).

o  Use of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C.

§ 924(c)(1)(A) against J. Rodriguez, S. Rodriguez, and Wong, on or about

August 30, 2020 (Count 5).

o  Use of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C.

§ 924(c)(1)(A) against J. Rodriguez, S. Rodriguez, and Wong, on or about

September 14, 2020 (Count 6).

(Doc. 98).  That same day, the Superseding Indictment was sealed upon Motion by the

Government wherein it requested that it be sealed pending the arrest of the defendants and

asserting that the sealing order was necessary to permit the arrest of those charged with the violation of criminal laws (Docs. 106, 107).  Arrest Warrants were issued for Defendants Lysakowski and Zeidan (Docs. 103, 105).

On September 28, 2023, a "Waiver of Rule 5 & 5.1 Hearings" from the U.S. District Court for the Western District of Missouri, signed by Rachel Lysakowski on September 26, 2023 and her counsel, was filed of record.  The District Court for the Western District of Missouri further issued an "Order of Removal to Another District" on September 27, 2023, ordering Defendant Lysakowski to appear at the U.S. District Court for the Middle District of Pennsylvania on October 3, 2023. (*See* Doc. 118).  On October 3, 2023:  Lysakowski was arraigned and entered a plea of not guilty. (*See* Docs. 120-122).  Thereafter, on November 2, 2023, Defendant Mohammed Zeidan was arraigned and entered a plea of not guilty. (*See* Docs. 131-133).

*Wong III* was unsealed on November 3, 2023, upon motion by the Government stating that "all defendants are now in custody" (Docs. 129, 136).  Defendants J. Rodriguez, S. Rodriguez, and Wong were all arraigned on the Superseding Indictment and entered pleas of not guilty on November 14, 2023. (*See* Docs. 149-150, 152-153, 157-158).

On March 22, 2024, the time for the filing of pre-trial motions having expired as to all defendants, the Court scheduled trial to commence on June 10, 2024.  (Doc. 200).[6]

---

[6] On February 21, 2024, a signed plea agreement was filed of record as to Defendant Lysakowski (Doc. 189).  Defendant Lysakowski thereafter entered a guilty plea before this Court on March 22, 2024 (*see* Doc. 197). Trial was therefore only scheduled as to the remaining four co-defendants.

Defendant Wong filed the present "Motion to Dismiss for Violation of Defendant's Right to Speedy Trial" (Doc. 213) on April 18, 2024.

One month prior to the trial scheduled in this case, on May 8, 2024, the grand jury returned a Second Superseding Indictment against Wong, J. Rodriguez, S. Rodriguez, and Zeidan charging as follows:

o   Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951, against J. Rodriguez, S. Rodriguez, Wong, and Zeidan, beginning on July 22, 2020 and continuing through September 2020 (Count 1).

o   Attempted Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951, against J. Rodriguez, S. Rodriguez, Wong, and Zeidan, on or about August 29, 2020 (Count 2).

o   Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951, against J. Rodriguez, S. Rodriguez, and Wong, on or about August 30, 2020 (Count 3).

o   Use of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) against J. Rodriguez, S. Rodriguez, and Wong, on or about August 30, 2020 (Count 4).

o   Use of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) against J. Rodriguez, S. Rodriguez, and Wong, on or about September 14, 2020 (Count 5).

o  Firearms Conspiracy, in violation of 18 U.S.C. § 924(o), against J. Rodriguez, S.

Rodriguez, Wong, and Zeidan (Count 6).

(Doc. 218).  Of note, and relevant to the Court's analysis herein, Count 3 of the First

Superseding Indictment is not included in the Second Superseding Indictment, and

therefore Counts 4 and 5 of the Superseding Indictment are now Counts 3 and 4 of the

Second Superseding Indictment, with minor alterations.  Furthermore, the Second

Superseding Indictment adds a new Count 6, specifically a Firearms Conspiracy.

### III. ANALYSIS

Defendant Wong "moves the Court to Dismiss the Superseding Indictment against

him with prejudice due to the violation of his Sixth Amendment Right to Speedy Trial and the

violation of his rights under the Speedy Trial Act".  (Doc. 213).  The Court will address the

Speedy Trial Act and Sixth Amendment claims in turn.

### A.  Speedy Trial Act – 18 U.S.C. § 3161

The Speedy Trial Act ("STA") establishes time limits for completing the various

stages of a federal criminal prosecution. The information or indictment must be filed within

30 days from the date of arrest or service of the summons.  18 U.S.C. § 3161(b).  The STA

further provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

This seventy-day period is subject to expansion by periods of excludable delay.  *See Henderson v. United States*, 476 U.S. 321, 326 (1986). *See also, Zedner v. United States*, 547 U.S. 489, 497 (2006) (the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start. *See* § 3161(h).").  Under the Speedy Trial Act, any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded from the 70-day period permitted between indictment and trial.  18 U.S.C. § 3161(h)(1)(D).  The provision broadly applies to all pretrial motions, whether they actually cause a postponement of trial. *Henderson*, 476 U.S. at 327 (exclusion is automatic).

As explained by the Third Circuit soon after the Supreme Court's decision in *Henderson*:

> Section 3161(h)(1)[(D)] excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)[(D)].
>
> Thus, subsection [(D)] excludes time in two situations. First, if the court holds

11

a hearing on the motion, all of the days between the filing of the motion and the conclusion of a hearing are excluded. *See Henderson v. United States,* 476 U.S. 321, ——, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299, 308 (1986). Interpreting that provision, the Supreme Court has held that subsection [(D)] also excludes any time following the hearing that is required for filing briefs and additional materials necessary for proper disposition of the motion. 476 U.S. at ——, 106 S.Ct. at 1877.

Second, if the court does not hold a hearing, subsection [(D)] excludes the period from the filing of the motion until the parties complete the submissions necessary for the court to reach a decision. 476 U.S. at ——, 106 S.Ct. at 1876. . . .

*United States v. Felton*, 811 F.2d 190, 195 (3d Cir. 1987).

Section 3161(h)(1)(D) should be read in conjunction with § 3161(h)(1)(H), which states that "[a]ny period of delay resulting from other proceedings concerning the defendant, including . . . delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court" is excluded from the speedy trial time when computing the time within which trial must commence, 18 U.S.C. § 3161(h)(1)(H). *See United States v. Williams*, 917 F.3d 195, 203 (3d Cir. 2019) (explaining that in *Henderson*, "the Supreme Court counseled parties to read the exclusions contained in section 3161(h)(1) 'in connection with' each other.") (citing *Henderson*, 476 U.S. at 328). Thus, "'prompt disposition' of a motion—as referred to in . . . section 3161(h)(1)(D)—must be interpreted with reference to the thirty-day limitation contained in . . . section 3161(h)(1)(H), such that 'prompt disposition' must be interpreted to mean disposition of a motion within thirty days of that motion's being 'under advisement' by a court." *Williams*, 917 F.3d at 203 (citing *Henderson*, 476 U.S. at 329).

12

Furthermore, the STA provides for periods of exclusion for:

[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). When calculating the time, "both the date on which an event occurs or a motion is filed and the date on which the court disposes of a motion are excluded." *United States v. Lattany,* 982 F.2d 866, 872 n.6 (3d Cir. 1992).

In addition, "pursuant to section 3161(h)[(6)], 'after defendants are joined for trial, "an exclusion applicable to one defendant applies to all codefendants.'" [*United States v. Novak,* 715 F.2d 810, 815 (3d Cir.1983)] (quoting *United States v. Edwards,* 627 F.2d 460, 461 (D.C. Cir. 1980))". *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993). *See also*, *United States v. Erby*, 419 F.App'x 176, 179 (3d Cir. 2011).

Nonetheless, "[i]f a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). The Speedy Trial Act "admits no ambiguity in its requirement that when such a violation has been demonstrated, 'the information or indictment shall be dismissed on motion of the defendant.'" *United States v. Taylor*, 487 U.S. 326, 332 (1988) (quoting 18 U.S.C. § 3162(a)(2)).

Here, without specifically identifying the number of days that Defendant Wong believes have passed on the STA clock, or the specific periods of time which Defendant

Wong believes constitute unexcluded time for Speedy Trial Act purposes, Wong argues that there has been a statutory speedy trial violation because "[a]t the time of trial [June 10, 2024], nine-hundred-ninety-nine (999) days will have passed since Defendant's initial court appearance on *Wong II* [3:21-cr-271]" (Doc. 214, at 30). At best, Defendant vaguely incorporates into his statutory arguments his general outline of the time set forth in his argument in support of his purported constitutional speedy trial violations. (*See* Doc. 214, at 30-31 ("As detailed above [in the Sixth Amendment violation section], the vast lion's share of time in this case is non-excludable time running against the Government. This is over six hundred (600) days of non-excludable time, which dwarfs the seventy (70) day limitation set forth under the Act. . .")). In turn, the Government asserts that there are no chargeable days under the Speedy Trial Act. (*See* Doc. 217, at 18, 43).

Because Wong appears to refer the Court back to his constitutional speedy trial arguments in support of calculating the relevant time that has elapsed for statutory speedy trial purposes, the Court will apply those dates herein.

Wong claims that the "time fairly attributable to Steven Wong on each case is" 364 days in *Wong II* (308 days from October 18, 2021-August 22, 2022) and 56 days (November 18, 2022-January 13, 2023) and no time in *Wong III*. (Doc. 214, at 18). Although Wong admits that "some of the defense excluded time on these cases is attributable to Co-Defendants and their respective requests of time", he argues that it would be "unfair" to weigh this time against him since he was "actively attempting to have a Speedy trial in this

matter." (*Id*.).  Defendant further claims that he "did not acquiesce in the extension of time requested by these Co-Defendants. . . [and] specifically objected." (*Id*.).

It is well established that for purposes of counting the number of days excludable under the Speedy Trial Act, "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" "shall be excluded . . . in computing the time within which the trial of any such offense must commence."  18 U.S.C. § 3161(h)(6).  *See e.g. United States v. Claxton*, 766 F.3d 280, 293 (3d Cir. 2014) (rejecting defendant's argument that 187 days were non-excludable because "[d]uring that time, there were numerous emergency motions filed by his co-defendants requesting extensions of time to file responses and objections to pre-sentence reports, notices of unavailability, motions to continue status conference, requests for hearings, and even a motion to extend the time to file pretrial motions", and these motions "served to toll the speedy trial clock for all defendants. . . .").  Here, Wong calculates the time of excludable delay only directly attributable to him, arguing that any other time must be counted against the Government and should be considered non-excludable.  Neither the Speedy Trial Act, nor the applicable case law, supports this conclusion.  Wong ignores the numerous motions filed by his co-defendants in both *Wong II* and *Wong III*, including requests for extension of time, requests for new counsel, and motions in limine, and the Court's Orders in *Wong II* and *III* specifically excluding the relevant time periods from speedy trial calculation.  At no time did Wong file a motion to

sever on the basis that he wished to proceed immediately to trial in either case, or for any other reason, a fact this Court specifically noted in its Order extending the date for the filing of pre-trial motions as to all Defendants on November 20, 2023 (*See* Doc. 170) (issuing scheduling Order as to all Defendants, extending the deadline for the filing of pre-trial motions as to all defendants to January 5, 2024, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7), and noting that "all defendants in the above-captioned criminal action [had] been arraigned on the Superseding Indictment (Doc. 98), and no party [had] moved for the severance of one or more defendant at this time")).

Nonetheless, in determining the merits of Defendant's motion, the counts which were previously charged in *Wong II* must be differentiated from those first charged in *Wong III* where the STA clock begins to run at different times. Here, the Government acknowledges that Counts 4 and 5 of the First Superseding Indictment in *Wong III* were previously charged in *Wong II* and that the Speedy Trial Act clock for those two counts thus began to run as to Wong on September 28, 2021, the day after Wong's arraignment. (*See e.g.*, Doc. 217, at 39 n. 4; *id*. at 42-43). The Government asserts that Counts 1, 2, and 6, are all counts brought for the first time against Wong in the First Superseding Indictment filed on June 21, 2023 and the Speedy Trial Act did not begin to run as to these counts until November 15, 2021, the day after Wong's arraignment in this case. (*Id*. at 39, n.4).[7] *See United States v.*

---

[7] As previously explained, for purposes of clarity, in this memorandum opinion the Court refers to

*Stevenson*, 832 F.3d 412, 419 n.4 (3d Cir. 2016) ("On the other hand, '[i]f the subsequent filing charges a new offense that did not have to be joined with the original charges, then the subsequent filing commences a new, independent speedy trial period.'") (quoting *Lattany*, 982 F.2d at 872 n.7).

The Court will first address Counts 4 and 5 of the First Superseding Indictment.

Upon review of the docket in *Wong II*, it is evident that, although fewer than 70 days, a number of days between Wong's arraignment in September, 2021, and the Court's docket annotation on June 21, 2023 canceling trial in that case, are not excludable under the Speedy Trial Act. This Court need not, however, parse the record to account for each small miscellaneous non-excludable time period from September 27, 2021, through June 26, 2023, where no less than 108 days of non-excludable time elapsed following the final cancellation of the trial in June of 2023 and prior to the Government's motion to dismiss the indictment against Wong on November 20, 2023.

The Government argues that the time period "[f]rom March 21, 2023 to November 20, 2023" in *Wong II* is excludable "due to outstanding Motion to Suppress, among other grounds" and that the overlapping time period of "[f]rom May 7, 2023, to November 20, 2023" is also excludable "due to Motions to Continue as to Defendant Joushton Rodriguez,

---

the Counts as enumerated in the First Superseding Indictment. However, the Court notes that the Government's Second Superseding Indictment does not include Count 3, thereby making Counts 4 and 5 of the First Superseding Indictment now listed as Counts 3 and 4 in the Second Superseding Indictment. Further, because Count 3 of the First Superseding Indictment is no longer charged, the Court will omit analysis of whether there has been a statutory or constitutional violation as to that count.

among other grounds." (Doc. 217, at 42-43). Neither argument is correct.

On March 21, 2023, Defendant Wong filed a Motion to Suppress in *Wong II* and supporting brief (3:21-cr-271, Doc. 198-200). The docket does not reflect that the Government ever filed a brief in opposition to this motion, nor does the docket reflect that the Court ruled on the motion. Where any brief in opposition by the Government was due no later than April 4, 2023, the motion was ripe and "under advisement" as of April 5, 2023. Pursuant to § 3161, Defendant Wong's motion only tolled the speedy trial clock for 30 days thereafter. *See Williams*, 917 F.3d at 203 ("'prompt disposition' of a motion—as referred to in . . . section 3161(h)(1)(D)—must be interpreted with reference to the thirty-day limitation contained in . . . section 3161(h)(1)(H), such that 'prompt disposition' must be interpreted to mean disposition of a motion within thirty days of that motion's being 'under advisement' by a court.") (citing *Henderson*, 476 U.S. at 329). Thus, Wong's motion to suppress only tolled the speedy trial clock until May 5, 2023.[8]

Nor does co-defendant J. Rodriguez's motion for extension of time, filed in June of 2023, support the Government's position. On June 20, 2023, Defendant J. Rodriguez filed an unopposed motion to extend the pre-trial motion deadline and trial date (3:21-cr-271, Doc. 238). This motion was never ruled upon. Thus, for the same reasons discussed with

---

[8] The Court recognizes that the speedy trial time may have been further tolled had the Court in *Wong II* held a hearing on Wong's Motion to Suppress, or stated that it intended to hold a hearing, prior to the dismissal of the indictment against Wong, regardless of how long after the motion was filed that hearing occurred.

18

respect to Wong's Motion to Suppress, at best, J. Rodriguez's motion for extension of time excluded 44 days from the Speedy Trial calculation (14 days for a response by the Government and 30 days thereafter to rule on the motion). As a result, the speedy trial clock was only arguably tolled until August 4, 2023.

There is no basis to find that any time from August 4, 2023, until November 20, 2023, when the Government moved to dismiss the indictment against Wong, is excludable from statutory speedy trial calculations. Nor is there any Order by the Court in *Wong II* excluding this time period, or any time after June 21, 2023, from speedy trial calculations pursuant to any exception under § 3161.[9] This results in a 108-day period of non-

---

[9] On June 21, 2023, an annotation appeared on the docket in *Wong II* stating: "The trial scheduled to begin on Monday, June 26, 2023 has been continued. New date will be forthcoming." (3:21-cr-271, Dkt. annotation of June 21, 2023). No further relevant Orders or annotations appear on the docket sheet until November, 2023.

> Together, the procedural requirements in [*United States v. Brooks*, 697 F.2d 517 (3d Cir. 1982)] and [*United States v. Rivera Construction Co.*, 863 F.2d 293 (3d Cir. 1988)] give considerable leeway to district courts in granting continuances for the ends of justice. For example, under *Brooks* a district court may give the factual basis for an ends-of-justice continuance after it is entered (but before ruling on a motion to dismiss the indictment) if the continuance order cites the relevant provision of the Act, 18 U.S.C. § 3161(h)(7)(A), or states that it is for the "ends of justice." *See* 697 F.2d at 521-22. Under *Rivera*, a district court may exclude time for the "ends of justice" without citing the Act or using any of its magic words so long as the court explains a valid factual basis for the continuance on the record when the continuance is ordered. See 863 F.2d at 297.

> But this procedural leeway is not without limits, as we made clear one year after *Rivera* in our third guiding case—*United States v. Brenna*, 878 F.2d 117, 122 (3d Cir. 1989) (per curiam). If a district court enters a continuance order without either stating the factual basis for excluding time under the Act or using language that invokes it, the delay caused by the continuance is not excluded and the court cannot exclude the time in hindsight. *Id.* ("We reaffirm ... that an ends of justice continuance ... cannot be entered nunc pro tunc....").

*United States v. Reese*, 917 F.3d 177, 182 (3d Cir. 2019). Thus, although the Third Circuit has

excludable time under the Speedy Trial Act. Because the Government concedes that Counts 4 and 5 of the First Superseding Indictment in *Wong III* were previously charged in *Wong II* and that the STA clock thus began to run as to Wong on September 28, 2021, over 70 days of non-excludable time has run as to Counts 4 and 5 of the First Superseding Indictment, and those Counts must be dismissed.

With respect to Counts 1, 2, and 6 of the First Superseding Indictment, the Government asserts that the Speedy Trial Act began to run on November 15, 2023, the day after Wong was first arraigned in this case. The Court agrees with the Government that the STA began to run on November 15, 2023 as to Counts 2 and 6. Because Wong principally bases all of his arguments on an alleged violation of the Sixth Amendment, and only briefly specifically addresses the Speedy Trial Act, it is difficult for this Court to ascertain when Wong believes that the STA clock began to run as to these two counts. Nonetheless, as evidenced by his Reply brief, Wong believes that Count 1 of the First Superseding Indictment alleges the same conspiracy as that alleged in *Wong II*, and presumably

---

acknowledged that district courts are granted "considerable leeway" in granting continuances, the Court's June 21, 2023 docket annotation neither excluded time under § 3161 nor used language to invoke it and was therefore insufficient to stop the Speedy Trial Act clock, an issue this Court would have expected former counsel for the Government to have recognized and attempted to remedy.

This Court additionally notes that the *Wong II* Court's June 21, 2023 annotation was not preceded by any motion by the Government requesting a continuance of the trial date. Rather, the only motion filed soon before to the Court's annotation is the motion by J. Rodriguez to extend the time to file pre-trial motions and to move the trial date. J. Rodriguez's motion and proposed order do not reference § 3161 or request that any extension of time be excluded pursuant to the Speedy Trial Act and the Court's docket annotation makes no reference to this motion as the basis for its continuance of trial. Had the Government filed any motion immediately prior to the *Wong II* court's annotation continuing trial generally, or at some time soon thereafter, to exclude the applicable time period pursuant to the Speedy Trial Act, the statutory violation identified herein may have been avoided.

therefore that the time under the Speedy Trial Act in Count 1 should be counted as of

September 28, 2021, as it was with Counts 4 and 5.

In *Wong II*, Count 1 of the Indictment charged Steven Wong, J. Rodriguez, S.

Rodriguez, and two other defendants with Conspiracy to Interfere with Commerce by

Robbery; specifically:

> In August of 2020, and continuing to on or about August 30, 2020, in Schuylkill County, within the Middle District of Pennsylvania and elsewhere, the defendants,
>
>> STEVEN WONG,
>> ERIC LASALLE,
>> JOSHUA MARSH,
>> JOUSHTON RODRIGUEZ, and
>> SOLOMON RODRIGUEZ
>
> knowingly and intentionally conspired and agreed with others known and unknown to the grand jury to commit robbery, which robbery unlawfully obstructed, delayed, and affected commerce, and the movement of articles and commodities in commerce, in that defendants conspired to unlawfully take and obtain property from other persons by entering their home with firearms and stealing controlled substances and U.S. currency, in their presence, and against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and property.
>
> All in violation of Title 18, United States Code, Section 1951(a), (b)(1), and (b)(3).

(3:21-cr-271, Doc. 1).[10]

---

[10] Although the Government filed a Superseding Indictment and Second Superseding Indictment in *Wong II*, the allegations of Count 1 did not change, apart from the addition of Defendant Alarick Batista to the Count (*see* 21-cr-271, Docs. 50, 157). Defendants Lasalle, Marsh, and Batista all pleaded guilty to Count 1 of the Superseding Indictment in *Wong II* (*id.* at Docs. 187, 189, 207), with the result being that, at the time the Superseding Indictment was filed in *Wong III*, Count 1 only remained pending against J. Rodriguez, S. Rodriguez, and Wong in *Wong II*.

In *Wong III*, Count 1 of the First Superseding Indictment charged Steven Wong, J.

Rodriguez, S. Rodriguez, and two other defendants with Conspiracy to Interfere with

Commerce by Robbery; specifically:

Beginning on July 22, 2020, and continuing through September, 2020, in Schuylkill County, within the Middle District of Pennsylvania and elsewhere, the defendants,

JOUSHTON RODRIGUEZ,
SOLOMON RODRIGUEZ,
STEVEN WONG,
MOHAMMED ZEIDAN, and
RACHEL LYSAKOWSKI

knowingly and intentionally conspired and agreed with others known and unknown to the grand jury to commit robberies, which robberies unlawfully obstructed, delayed, and affected commerce, and the movement of articles and commodities in commerce, in that defendants conspired to unlawfully take and obtain property from other persons by entering their home with firearms and stealing controlled substances and U.S. currency, in their presence, and against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and property.

All in violation of Title 18, United States Code, Section 1951(a).

(Doc. 98).

Upon review of the relevant indictments, the conspiracy alleged in Count 1 in *Wong*

*II* and *Wong III*, differ in three respects: (1) although both conspiracy charges include Wong,

S. Rodriguez, and J. Rodriguez, the other charged co-conspirators are different; (2) the time

period of the conspiracy in *Wong III* is several weeks longer than the conspiracy alleged in

*Wong II*; and (3) Count 1 in *Wong II* alleges a conspiracy to commit a "robbery" whereas

*Wong III* alleges a conspiracy to commit "robberies".

In support of its assertion that Count 1 in *Wong III* is a new charge under the First

Superseding Indictment in this case, and thus the Speedy Trial Act clock does not

commence as to this Count until November 15, 2023, the Government asserts:

> While the Defendant was charged with a conspiracy under Case No. 3:21-CR-271, that conspiracy, as charged in numerous instruments under that case number, allege a conspiracy in August of 2020, between the Defendant, Eric Lasalle, Joshua Marsh, Joushton Rodriguez, Solomon Rodriguez, and Alaric Batista. The conspiracy in the instant case, has a time period of July 22, 2020, through September 14, 2020, and alleges different co-conspirators and different robberies than the charging instruments in 3:21-CR-271. Because the elements for the conspiracy found in 3:21-CR-271 would require proof of different elements than the conspiracy charged in the instant case, the starting clock for Count 1 would also begin the day after the Defendant's November 14, 2023, arraignment.

(Doc. 217, at 38-39).

As previously stated, if a superseding indictment "charges a new offense that did not

have to be joined with the original charges, then the subsequent filing commences a new,

independent speedy trial period", *Lattany*, 982 F.2d 866, 872 n.7 (3d Cir. 1992).  However, a

superseding indictment "[does] not rescue the . . . original charges" of an indictment by re-

starting the speedy trial period as to those original charges.  *Stevenson*, 832 F.3d at 419

n.4.  *Cf. United States v. Komolafe*, 246 F.App'x. 806, 809-810 (3d Cir. 2007) (holding,

following a trial on a Second Superseding Indictment that included "Counts I and IV" – which

were first charged in a First Superseding Indictment – that "a new, independent 70-day

speedy trial period commenced for Counts I and IV when Komolafe appeared in court on

the [First] Superseding Indictment" and not finding that period reset by the Second

Superseding Indictment). *See also*, *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994) ("The filing of a superseding indictment does not affect the speedy trial clock for offenses charged in the original indictment or any offense required to be joined under double jeopardy principles. The clock continues to run from the original indictment or arraignment, whichever was later, and all speedy trial exclusions apply as if no superseding indictment had been returned. This prevents the government from circumventing the speedy trial guarantee through the simple expedient of obtaining superseding indictments with minor corrections.") (internal citations omitted).  Therefore, if Count 1 in the *Wong III* Superseding Indictment charges "the same offense" as Count 1 in the *Wong II* Indictment, it is not subject to a new speedy trial period and will be considered expired based on the Speedy Trial Act violations that occurred during the pendency of the *Wong II* case.

In order to determine whether an offense is "the same," the Third Circuit has held that district courts should determine whether joinder of the old and new charges would be required under the Double Jeopardy Clause of the Constitution.  *Novak*, 715 F.2d at 817. "In the context of disputes under the Speedy Trial Act, courts generally will be limited to the face of the indictment in determining whether the superseding indictment charges the same offense, within the meaning of subsection [(d)(1)] and the Double Jeopardy Clause, as the original indictment."  *Novak*, 715 F.2d at 817.  *But see*, *United States v. Smith*, 82 F.3d 1261, 1268 (3d Cir. 1996) ("We decline the government's invitation to look solely to the acts as alleged in each indictment.  Those acts are, of course, primarily the overt acts which the

grand jury chose to allege in each instance. Undue emphasis on the alleged overt acts is precisely the problem we sought to avoid when we adopted the totality of the circumstances approach. That approach requires us to look into the full scope of activities described and implied in the indictments.").

For double jeopardy purposes,

[t]he established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932):

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*Brown v. Ohio*, 432 U.S. 161, 166 (1977) (internal alterations and quotation marks omitted).

In determining whether successive charges of conspiracy charge the same crime, the Third Circuit has adopted a "totality of the circumstances" test, which does not emphasize the existence of any differences between the alleged overt acts, but instead requires a court to look at four factors to determine whether there was one or more agreements:

Under the totality of circumstances approach . . ., a conspiracy defendant will make out a non-frivolous showing of double jeopardy if he can show that (a) the "locus criminis" of the two alleged conspiracies is the same; (b) there is a significant degree of temporal overlap between the two conspiracies charged; (c) there is an overlap of personnel between the two conspiracies (including unindicted as well as indicted coconspirators); and (d) the overt acts charged and the role played by the defendant according to the two indictments are similar.

*United States v. Liotard*, 817 F.2d 1074, 1078 (3d Cir. 1987) (internal citations omitted). *See*

*United States v. Maragh*, 456 F.App'x 181, 183 n.1 (3d Cir. 2012) ("The totality of the

circumstances test only governs cases involving prosecution for a conspiracy charge,

followed by a subsequent prosecution for another conspiracy charge."). In applying the

*Liotard* totality of the circumstances analysis, "the ultimate inquiry presented by conspiracy

double jeopardy claims is whether there are two agreements or only one" and the four

*Liotard* factors should not be applied in a rigid manner, "as different conspiracies may

warrant emphasizing different factors." *Smith*, 82 F.3d at 1267.

Here, application of the four *Liotard* factors demonstrates that Defendant has made a

non-frivolous showing of a single conspiracy alleged in both *Wong II* and *Wong III*.

Although the Court would normally engage in a thorough analysis of these factors, and

require the Government to rebut this showing at an evidentiary hearing, at least one

subsequent brief by the Government, in response to another motion by a Defendant, has

made this unnecessary. For example, in its brief in opposition to co-defendant Zeidan's

motion to sever, the Government states:

> The instant charges [in *Wong III*] stem from an ATF investigation into several
> members of the Schuylkill County chapter of the Infamous Ryders Motorcycle
> Club, who formed a criminal conspiracy to rob drug dealers of drugs and drug
> proceeds while armed. The conspirators, who have been charged under
> Docket Nos. 3:22-CR-72 and 3:21-CR-271, include Steven Wong, Solomon
> Rodriguez, Joushton Rodriguez, Cornelius Green, Eric Lasalle, Alarick
> Bastista, Joshua Marsh, Mohammed Zeidan, and Rachel Lysakowski. Of the
> charged conspirators, Wong, Green, Joushton Rodriguez, Solomon Rodriguez,
> Lasalle, Batista, and Marsh were members or associates within the Infamous

Ryders Motorcycle Club. Defendants Zeidan and Lysakowski were not members of the club. Other members of the Motorcycle Club, including William Murphy, Izzy Soler, Timothy Carroll, and others, were not members of the conspiracy to commit armed robbery or possess firearms in furtherance of such armed robbery, but did witness the conspiracy members meet and often discuss their plans to commit these crimes. The members of the Infamous Ryders Motorcycle Club who were not members of the conspiracy, such as Soler, Murphy, and Carroll, also saw the charged defendants in possession of firearms during the summer and fall of 2020.

(Doc. 256, at 2-3). (*See also*, 3:21-cr-271, Doc. 244 at 9 (Government motion moving to dismiss Second Superseding Indictment in *Wong II* and explaining that "Counts One, Four, and Five of this Superseding Indictment [in *Wong III*] arise from the same criminal conduct which was charged as Counts One, Two, and Three of the Second Superseding Indictment in the instant case. (Doc. 157 of Docket No. 3:21-CR-271 and Doc. 98 of Docket No. 3:22-CR-72).").  This synopsis of the Government's conspiracy charge, and the Government's admission in *Wong II* when requesting that Wong be dismissed from that case, unequivocally makes clear that, while it has expanded the time period of the alleged conspiracy by several weeks, and added several additional armed robberies to this time period, the location of the conspiracy is the same, there is a significant temporal overlap between the two conspiracies charged, there is a significant, if not entire, overlap between the personnel in the charged two conspiracies,[11] and the role played by Defendant Wong

---

[11] Specifically, the Government's description of the conspiracy charge makes clear that Lasalle, Batista, and Marsh, while not charged in *Wong III*, still form part of the conspiracy.  It appears that they were not charged in *Wong III* solely because they had already agreed to plead guilty to the conspiracy as charged in Count 1 of *Wong II*.

and his co-defendants in Count 1 of both indictments is identical, to wit, to "conspire[] to unlawfully take and obtain property from other persons by entering their home with firearms and stealing controlled substances and U.S. currency, in their presence, and against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and property" (3:21-cr-271, Doc. 1; 3:22-cr-72, Doc. 98).

Accordingly, the Court finds that the Speedy Trial Act clock for Count 1 of the Superseding Indictment in *Wong III* began to run as of September 28, 2021. For the reasons set forth with respect to Counts 4 and 5, Count 1 must also be dismissed for violation of the STA.

Although Counts 1, 4, and 5 of the Superseding Indictment must be dismissed, the same is not true as to Counts 2 and 6 of the Superseding Indictment. Counts 2 and 6 of the Superseding Indictment allege new charges against Wong and the Speedy Trial Act began to run as to those Counts on November 15, 2023, the day after Wong was first arraigned in this case. Although Wong was arraigned in *Wong III* on November 15, 2023, the Speedy Trial Act clock was already tolled by co-defendants who had previously been arraigned in the case, beginning with co-Defendant Rachel Lysakowski as of October 5, 2023 when this Court issued a scheduling order as to Lysakowski, directing all pretrial motions to be filed no later than October 17, 2023, excluding the time from the date of the Order and the deadline for filing pre-trial motions pursuant to 18 U.S.C. § 3161(h)(7) and scheduling trial to commence on November 27, 2023 (Doc. 125, ¶¶ 1, 6(d)). All time from October, 2023, until

the time of trial on June 10, 2024, was thereafter excluded under the Speedy Trial Act. This

was the result of a number of pre-trial motions to extend the time to file pre-trial motions by

Wong's co-defendants, as well as multiple orders by this Court excluding time from the

Speedy Trial Act. Thus, it is clear that there has been no violation of the Speedy Trial Act

as to Counts 2 and 6 of the First Superseding Indictment.[12]

---

[12] To prevent any dispute or confusion as to the STA calculations in *Wong III*, the Court lists the defendants' requests for extensions of time, the Court's Orders granting the motions, and all other relevant documents relating to the running of the STA clock for Counts 2 and 6:

- October 3, 2023: Rachel Lysakowski is arraigned and enters a plea of not guilty. (*See* Docs. 120-122).
- October 5, 2023: This Court issues a scheduling order as to Lysakowski, directing all pretrial motions to be filed no later than October 17, 2023, excluding the time from the date of the Order and the deadline for filing pre-trial motions pursuant to 18 U.S.C. § 3161(h)(7) and scheduling trial to commence on November 27, 2023. (Doc. 125, ¶¶ 1, 6(d)).
- October 17, 2023: Lysakowski moves for extension of deadline to file pre-trial motions (Doc. 127), which is granted by the Court on October 20, 2023, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) (Doc. 128). The deadline for the filing of pre-trial motions by Lysakowski is extended to November 17, 2023.
- November 2, 2023: Defendant Mohammed Zeidan is arraigned and enters a plea of not guilty. (*See* Docs. 131-133).
- November 6, 2023: This Court issues a scheduling order as to Zeidan, directing all pretrial motions to be filed no later than November 16, 2023, excluding the time from the date of the Order and the deadline for filing pre-trial motions pursuant to 18 U.S.C. § 3161(h)(7) and scheduling trial to commence on December 26, 2023. (Doc. 125, ¶¶ 1, 6(d)).
- November 9, 2023: Lysakowski moves for extension of deadline to file pre-trial motions (Doc. 145), which is granted by the Court on November 14, 2023, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) (Doc. 159). The deadline for the filing of pre-trial motions by Lysakowski is extended to December 9, 2023.
- November 14, 2023: J. Rodriguez, S. Rodriguez, and Wong are arraigned on the Superseding Indictment and enter pleas of not guilty. (*See* Docs. 149-150, 152-153, 157-158).
- November 16, 2023: Zeidan moves for extension of deadline to file pre-trial motions (Doc. 162), which is granted by the Court on November 17, 2023, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) (Doc. 164). The deadline for the filing of pre-trial motions by Zeidan is extended to December 16, 2023.
- November 17, 2023: This Court issues scheduling order as to Wong, directing all pretrial motions to be filed no later than November 28, 2023, excluding the time from the date of the Order and the deadline for filing pre-trial motions pursuant to 18 U.S.C. § 3161(h)(7) and scheduling trial to

---

commence on December 26, 2023.  (Doc. 170, ¶¶ 1, 6(d)).

- November 20, 2023: This Court issues a scheduling Order as to all Defendants, extending the deadline for the filing of pre-trial motions as to all defendants to January 5, 2024, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7), and noting that "all defendants in the above-captioned criminal action [had] been arraigned on the Superseding Indictment (Doc. 98), and no party [had] moved for the severance of one or more defendant at this time".  (Docs. 166-172).

- January 2, 2024: Zeidan moves for extension of deadline to file pre-trial motions (Doc. 174), which is granted by the Court on January 3, 2024, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) (Doc. 175).  The deadline for the filing of pre-trial motions by Zeidan is extended to February 5, 2024.

- January 3, 2024: J. Rodriguez moves for extension of deadline to file pre-trial motions (Doc. 176), which is granted by the Court on January 4, 2024, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) (Doc. 177).  The deadline for the filing of pre-trial motions by J. Rodriguez is extended to February 5, 2024.

- January 4, 2024: Lysakowski moves for extension of deadline to file pre-trial motions (Doc. 178), which is granted by the Court on January 5, 2024, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) (Doc. 179).  The deadline for the filing of pre-trial motions by Lysakowski is extended to February 5, 2024.

- January 24, 2024: S. Rodriguez moves for extension of deadline to file pre-trial motions (Doc. 180), which is granted by the Court on January 25, 2024, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) (Doc. 181).  The deadline for the filing of pre-trial motions by S. Rodriguez is extended to February 5, 2024.

- January 29, 2024: Zeidan moves for extension of deadline to file pre-trial motions (Doc. 182), which is granted by the Court on January 30, 2024, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) (Doc. 183).  The deadline for the filing of pre-trial motions by Zeidan is extended to March 5, 2024.  The Court's Order directs that "Absent exigent circumstances, no further motions for an extension of time to file pretrial motions will be granted."

- February 5, 2024: Lysakowski and J. Rodriguez separately move for extension of deadline to file pre-trial motions (Docs. 184, 185), which are granted by the Court on February 6, 2024, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) (Docs. 186, 187).  The deadline for the filing of pre-trial motions by Lysakowski and J. Rodriguez is extended to March 21, 2024.  The Court's Orders direct that "Absent exigent circumstances, no further motions for an extension of time to file pretrial motions will be granted."

- March 4, 2024: Zeidan moves for a final extension of deadline to file pre-trial motions (Doc. 192) "in order to align the pretrial motions deadline . . . with that of his co-defendant", which is granted by the Court on March 5, 2024, with the relevant time excluded from speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) (Doc. 193).  The deadline for the filing of pre-trial motions by Zeidan is extended to March 21, 2024.  The Court's Order directs that "Absent exigent circumstances, no further motions for an extension of time to file pretrial motions will be granted."

- March 22, 2024: The time for the filing of pre-trial motions having expired as to all defendants, the Court schedules trial to commence on June 10, 2024.  (Doc. 200).  The Court specifically finds that:

  [because] the ends of justice will be served by delaying trial in order to ensure counsel

Having found that Counts 1, 4 and 5 of the First Superseding Indictment must be dismissed, the Court turns to whether the dismissal of these counts is with or without prejudice.

"The Speedy Trial Act does not specify whether dismissal should be with or without prejudice, nor does it contain a default presumption one way or the other." *United States v. Robinson*, 389 F.3d 582, 586 (6th Cir. 2004). To determine whether the dismissal should be with or without prejudice, the court must consider, among other factors, "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). "Where, as [in section 3162(a)(2)], Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." *Taylor*, 487 U.S. at 336; *Stevenson*, 832 F.3d at 419 (quoting *Taylor*, 487 U.S. at 336)).

In *United States v. Taylor*, the Supreme Court identified the presence or absence of prejudice to the defendant as a relevant factor. 487 U.S. at 334. Therefore, the Court will analyze the three statutory factors as well as prejudice to Defendant. Because the Third

─────────────────────

for the parties the reasonable time necessary for effective preparation, taking into account the exercise of due diligence, and that such a delay outweighs the best interests of the public and the Defendants in a speedy trial, the time between the date of this Order and the commencement of trial is excluded from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7).

(*Id.*).

Circuit analyzes prejudice as a component of the third statutory factor, *Stevenson*, 832 F.3d at 422, the Court will do the same.[13]

In *United States v. Hastings*, 847 F.2d 920 (1st Cir. 1988), the First Circuit Court of Appeals provided context for the considerations identified in 18 U.S.C. § 3162(a)(2), explaining that the

> construct was intended as a compromise, gleaned from many sources and addressed to diverse constituencies. *See generally* A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* (1980), at 197-218. We are satisfied, based on the historical record, that the three-pronged test was crafted to encourage judges to weigh both private and public interests when determining whether or not to foreclose reprosecution. *See* [*United States v. Caparella*, 716 F.2d 976, 978–81 (2d Cir. 1983)] (analyzing legislative history). The omnibus clause of section 3162(a)(2), of course, allows a court to widen the lens of inquiry, but only slightly. Any extraneous matters to be considered must be rationally related to the balancing objectives of the tripartite test. Thus, a district court may factor into the Act's calculus, for example, items such as

---

[13] *Stevenson* footnotes its formulation of the third factor inquiry with an explanation of consideration of prejudice to the defendant:

> [t]he Supreme Court has suggested that prejudice to the defendant is among the "other[ ]" non-express factors that the Speedy Trial Act directs district courts to consider. *See Taylor*, 487 U.S. at 333-34, 108 S.Ct. 2413 (gleaning from the legislative history "the relevance of prejudice to the defendant"); *id.* at 344, 108 S.Ct. 2413 (Scalia, J., concurring in part) (arguing that the facts "(1) that prejudice to the defendant is one of the factors that the phrase 'among others' in § 3162(a)(2) refers to, and (2) that that factor is not necessarily determinative [are] so utterly clear from the text of the legislation that there is no justification for resort to the legislative history"). Courts have widely recognized, however, that this technically distinct factor often fits quite naturally into assessments of the third express factor. *See, e.g., United States v. Sykes*, 614 F.3d 303, 309 (7th Cir. 2010) ("That the court should consider whether the defendant has been prejudiced is implicit in th[e] broadly stated formula [of § 3162(a)(2) ]."); *United States v. Godoy*, 821 F.2d 1498, 1506 (11th Cir. 1987) ("The third factor makes clear the flexible, balancing approach required under § 3162(a)(1). In addition, it provides authority for considering such aggravating and mitigating factors as the length of the delay and the prejudice to the defendant."); *Campbell v. United States*, 364 F.3d 727, 731 (6th Cir. 2004).

*Stevenson*, 832 F.3d at 422 n.8.

the length of the delay and the prejudice to the defendant stemming from the violation (or conversely, the absence of prejudice). *See* [*United States v. Brown,* 770 F.2d 241, 245 (1st Cir. 1985)]. *Accord United States v. Bittle,* 699 F.2d 1201, 1208 (D.C. Cir. 1983). The approach, ultimately, is discretionary, permitting the trial judge to examine a variety of serviceable fabrics and measurements, and custom-tailor an order of dismissal to suit the exigencies and equities of a particular case.

*Hastings*, 847 F.2d at 924.

In looking to the seriousness of the offense, Wong "concedes that this is a serious offense" when addressing the charges in the *Wong III* Superseding Indictment. (Doc. 214, at 32). Specifically with respect to Counts 1, 4 and 5 (Conspiracy to Interfere with Commerce by Robbery, Interference with Commerce by Robbery, and Use of a Firearm in Furtherance of a Crime of Violence), these crimes involve the use of firearms and, at least as to Count 4, the use of violence. The Third Circuit has held that firearms offenses are "serious crimes for purposes of the Speedy Trial Act," *Stevenson*, 832 F.3d at 420, and there can be little dispute that a crime of violence is a serious offense. Additionally, each count carries a lengthy sentence if convicted, thereby further supporting a finding that the crimes are serious. Accordingly, the first statutory factor weighs in favor of dismissal without prejudice.

Although barely so, the second factor – the facts and circumstances that led to dismissal – also marginally weighs in favor of dismissal without prejudice.

As the Third Circuit has explained, the second factor requires courts to consider the reasons for the delay:

did it stem from "intentional dilatory conduct" or a "pattern of neglect on the part
of the Government," or rather, from a relatively benign hitch in the prosecutorial
process? *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005)
("In determining whether the facts and circumstances warrant dismissal with
prejudice we focus on the culpability of the conduct that led to the delay."); *see
also United States v. Blevins*, 142 F.3d 223, 226 (5th Cir. 1998) ("Regarding
the facts and circumstances leading to the dismissal, we look to whether the
Government sought the resultant delays for ulterior purposes as well as
whether the Government's failure to meet deadlines was repetitive, regular, and
frequent with respect to this defendant.").

*Stevenson*, 832 F.3d at 420. "Governmental delays motivated by bad faith, harassment, or

attempts to seek a tactical advantage weigh heavily against the government, while neutral

reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh

in favor of the government." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006).

The Supreme Court has instructed that "something more than an isolated unwitting

violation," must be found to support a dismissal with prejudice, as exemplified by a finding

that "the Government acted in bad faith with respect to the [defendant] [or] the court['s]

discovery of a pattern of neglect by the local United States Attorney." *Taylor*, 487 U.S. at

339.

Here, the Government in *Wong II* clearly neglected its duties in bringing Wong to trial

in the necessary statutory time period.  However, the record reflects that, until on or about

June 21, 2023, the large majority of the Speedy Trial time was excluded, and most

frequently at the request of Wong and his co-defendants. (*See generally*, 3:21-cr-271).

Although Wong argues that much of this time prior to June of 2023 was not directly

attributable to him, this does not necessarily render the Government responsible for the time

that elapsed from September 15, 2021, when Wong was first indicted, to June, 2023, when the Court cancelled trial without further explanation and without thereafter excluding any time from the cancelation of trial. Although it appears that there may be several brief periods of unexcluded time prior to June, 2023, in light of the seriousness of the charges, the number of charges, and the number of defendants involved in *Wong II* (6 defendants at the height of the case), any oversight by the Government up to June of 2023 appears to be isolated and is largely explainable in light of the repeated delays caused by Wong's co-defendants, which is applicable to Wong, and by Wong himself. There is no indication that, up until this time, any unexcluded delay was motivated by bad faith or an attempt to seek a tactical advantage by the Government.

Nonetheless, the Court is troubled by the Government's decision to request that trial in *Wong II* scheduled to be held on June 26, 2023, be continued, without the filing of any formal motion on the record setting forth the reasons for this request, and thereafter to file a Superseding Indictment in *Wong III* on June 21, 2023 which incorporated several of the charges against Wong from *Wong II*, and not informing Wong or his counsel of this fact until approximately 3 months later.[14] The Government presents only weak excuses for this behavior. Pointing to emails from the former AUSA assigned to *Wong II* and *Wong III* to

---

[14] *See* Doc. 214-2 (email from current AUSA to Wong's counsel dated September 27, 2023, responding to Wong's counsel's inquiry as to the status of the case and informing him that *Wong II* and *Wong III* "were all consolidated into the 2nd superseding indictment filed on June 21st of this year under [*Wong III*]".).

Wong's counsel, the Government asserts that it did inform Wong's counsel that a

superseding indictment would be filed against Wong by the end of June 2023. (Doc. 217, at

30 n. 2). The series of emails submitted by defense counsel between himself and the

former AUSA facially support this statement. (*See* Doc. 214-1). However, there was no

indication by the Government that the superseding indictment would be filed in a different

case, nor would Wong's counsel have had any reason to believe the superseding indictment

would be filed in a case in which Wong was not previously a defendant. Government

counsel, in effect, engaged in misrepresentations by omission, a factor which weighs

against the Government in determining whether the counts consolidated into *Wong III*

should be dismissed with or without prejudice. Further, the Government's assertion that it

could not inform Wong or his counsel about the Superseding Indictment in *Wong III*

because this indictment was under seal until November 3, 2023, does not excuse its failure

to take any action in *Wong II* after June of 2023 to exclude time pursuant to the Speedy

Trial Act.

In sum, this Court believes that the Government, through its prior AUSA, did engage

in questionable conduct in his communications with Wong's counsel, and arguably engaged

in tactics which extended the time in which the charges against Wong could have gone to

trial both prior to, and after June of 2023 in *Wong II*. However, were it not for a single period

of significant delay at the end of *Wong II*, the charges consolidated into *Wong III* would not

be subject to dismissal under the Speedy Trial Act. This one period of delay caused by the

Government's conduct is also minimal in comparison to the series of delays caused by Wong and his co-defendants throughout the two-year pendency of that case. Therefore, this second factor marginally weighs in favor of dismissal without prejudice.

Finally, the third factor, the impact of a reprosecution on the administration of this chapter and on the administration of justice, also weighs in favor of dismissal without prejudice.

"'The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act.'" *Stevenson*, 832 F.3d at 422 (quoting *United States v. Howard*, 218 F.3d 556, 562 (6th Cir. 2000) (internal citation and quotation marks omitted)). Regarding prejudice to the defendant, the Supreme Court explained in *United States v. Taylor* that:

> [t]he length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty:
>
>> [I]nordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

487 U.S. at 340-41 (quoting *Barker v. Wingo*, 407 U.S. 514, 537 (1972) (White, J.,

concurring)).  The Court added that "although the absence of prejudice is not dispositive, [it can be] another consideration in favor of permitting reprosecution." *Id.* at 341.

Defendant argues that this factor weighs in favor of dismissal with prejudice by incorporating his assertions of prejudice set forth in his arguments addressing the purported Sixth Amendment violation. (*See* Doc. 214, at 32 ("Regarding the remaining two [18 U.S.C. § 3162(a)(2)] factors, those issues are analyzed at length in this Brief's preceding section [addressing the Sixth Amendment], which is incorporated by reference.")).  For the reasons more extensively set forth by this Court in addressing the fourth *Barker* factor when determining whether there has been a Sixth Amendment violation, *supra*, Defendant's assertions of prejudice as a result of any delay in this case, including the delay as to Counts 1, 4, and 5, are without merit.  In sum, Defendant has largely set forth generalized arguments asserting prejudice, relying only on the fact that there has been a delay, without further explanation as to how this delay has caused him sufficient prejudice.  Of note, although Defendant has been incarcerated for the entirety of the proceedings in Wong II and Wong III, it is undisputed that he would have nonetheless been incarcerated until May of 2024 due to his 41-month sentence in *Wong I*, limiting any argument that his liberty has been interfered with or that he has been subject to any oppressive pretrial incarceration.  Nor does Defendant explain with any specificity how his defense was impaired as a result of the delay.  Finally, although it is evident that the Government was negligent in timely bringing Wong to trial as to Counts 1, 4, and 5, as discussed throughout this memorandum

opinion, Wong and his co-defendants, were responsible for a majority of the delays in both *Wong II* and *Wong III*, and it cannot be said that the Government engaged in some form of prosecutorial misconduct that must be deterred to ensure compliance with the Act through the dismissal of these charges with prejudice. To find otherwise would ignore the Supreme Court's instruction that "something more than an isolated unwitting violation, must be found to support a dismissal with prejudice," *Taylor*, 487 U.S. at 339.

Accordingly, this Court finds that all relevant factors weigh in favor of dismissal without prejudice of Counts 1, 4, and 5 of the Superseding Indictment based on the violation of the Speedy Trial Act. Notwithstanding this conclusion, before determining the proper disposition of the pending motion, the Court will analyze Defendant's Sixth Amendment claim since, if that claim is granted, Defendant would be entitled to dismissal of the charges against him with prejudice. *See Strunk v. United States*, 412 U.S. 434, 439-40 (1973).

## C. Sixth Amendment of the U.S. Constitution

Defendant Wong's motion and supporting brief primarily focus on his assertion that his Sixth Amendment rights have been violated (*see generally*, Doc. 214).[15]

In relevant part, the Sixth Amendment guarantees the accused "the right to a speedy

---

[15] In determining whether Defendant's constitutional speedy trial rights were violated, the Court's analysis is unaffected by the Government's filing of the Second Superseding Indictment on May 8, 2024. *See United States v. Battis*, 589 F.3d 673, 679 n.5 (3d Cir. 2009)(finding that the relevant time period was 45-months, beginning when Defendant was first indicted in 2004, and holding "that the speedy trial right was not affected by the filing of a superseding indictment in 2006. The Government does not argue otherwise (i.e., that the filing of the superseding indictment in 2006 restarted the constitutional speedy trial clock).").

and public trial." U.S. CONST. amend. VI. "Congress enacted the Speedy Trial Act to 'give

effect to the Sixth Amendment right to a speedy trial' by setting specified time limits after

arraignment or indictment within which criminal trials must be commenced." *United States*

*v. Rivera Const. Co.*, 863 F.2d 293, 295 (3d Cir. 1988)(citing H.R.Rep. No. 1508, 93d

Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong. & Admin. News 7401, 7402).

Thus, the protections of the Speedy Trial Act "exceed those of the Sixth Amendment, which

does not require that a trial commence within a specified time." *Lattany*, 982 F.2d at 870

n.5. Because the Speedy Trial Act "was enacted largely to make defendants' constitutional

speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in

which the time limits of the Speedy Trial Act have been met but the sixth amendment right

to speedy trial has been violated.'" *United States v. Alvin*, 30 F.Supp.3d 323, 340 (E.D.Pa.

2014)(quoting *United States v. Nance,* 666 F.2d 353, 360 (9th Cir. 1982)); *see also*, *United*

*States v. Green*, 508 F.3d 195, 202 (5th Cir. 2007) ("We have stated that it will be the

unusual case where the time limits under the Speedy Trial Act have been satisfied out the

right to a speedy trial under the Sixth Amendment has been violated.") (internal quotation

marks and citation omitted); *United States v. Salimonu*, 182 F.3d 63, 69 (1st Cir. 1999)

("The fact that the STA was not violated does not automatically preclude us from finding a

violation of [Defendant's] Sixth Amendment right to a speedy trial, although it would be

unusual to have a case where the STA is satisfied but the Sixth Amendment guarantee is

violated.").

As explained by the Supreme Court:

> Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down. We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question.

*Doggett v. United States*, 505 U.S. 647, 656 (1992).

When a defendant argues that his speedy trial rights have been violated, the Court should employ the four-part balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972) to assess the merits of the claim. *United States v. Dent*, 149 F.3d 180, 184 (3d Cir. 1998). An analysis of these factors avoids an "inflexible approach[]" which would result from applying a fixed-time period in determining whether there has been a constitutional violation and, rather, applies a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Barker*, 407 U.S. at 529-530. In *Barker*, the Supreme Court identified four factors in determining whether a defendant has been deprived of his right to a speedy trial: "[l]ength of delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. "None of these factors is 'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'" *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 533); *see also*, *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993) ("All factors must be considered and weighed as no one factor is dispositive nor 'talismanic.'") (citing *Barker*, 407 U.S. at 533).

41

With respect to the first factor, "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Otherwise stated,

> The first of these [factors] is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.

*Doggett,* 505 U.S. at 651-652 (internal citation omitted). In determining whether a defendant has met this threshold burden of demonstrating delay which is "presumptively prejudicial", the Supreme Court has noted that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year" but has emphasized that "as the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Id*. at 652 n.1. Further, "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably

less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 530-531. *See also*, *Battis*, 589 F.3d at 678 ("We have previously held that a delay of even fourteen months is sufficient to trigger review of the remaining *Barker* factors. However, we have also noted that longer delays can be tolerated, for example, when the crime is very serious or complex.")(internal citations and quotation marks omitted).

Here, Wong was first indicted and arraigned in *Wong II* in September of 2021. Thus, approximately 33 months have passed since the date of his indictment and arraignment as to Counts 1, 4, and 5. This period of time is sufficient to trigger the *Barker* enquiry. *See e.g., Hakeem*, 990 F.2d at 760 (over fourteen-month delay warranted full inquiry into *Barker* factors); *United States v. Mensah-Yawson*, 489 F.App'x 606, 611 (3d Cir. 2012)(fifteen-month delay sufficient to warrant inquiry into other *Barker* factors). Nonetheless, although this length of delay is "presumptively prejudicial", thus warranting an analysis of the *Barker* factors, this factor only moderately weighs in favor of Defendant. This case is one where Wong was first indicted in *Wong II* with four other co-defendants for Conspiracy to Interfere with Commerce by Robbery (Count 1), Interference with Commerce by Robbery (Count 2), and Use of a Firearm in Furtherance of a Crime of Violence (Count 3). (3:21-cr-271, Doc. 1). Wong was thereafter superseded on January 19, 2022, wherein the charges remained the same but an additional defendant was added to the indictment (*id*. at Doc. 50), and superseded a second time on February 22, 2023 to add the word "machinegun" to Count 3 (*id*. at Doc. 157). Wong was thereafter indicted for the first time in *Wong III* on June 21,

2023, with four other co-defendants, for crimes including one count of Conspiracy to

Interfere with Commerce by Robbery, two counts of Interference with Commerce by

Robbery, and three counts of Use of a Firearm in Furtherance of a Crime of Violence. (Doc.

98). None of the crimes with which Wong was charged in *Wong II* or *Wong III* are "ordinary

street crime[s]", but rather include several serious charges including conspiracy to interfere

with commerce by robbery and the repeated use of firearms.[16]  The first *Barker* factor

---

[16] The Government argues that the clock for the charges first brought against Wong when the Government filed the First Superseding Indictment in *Wong III* on June 21, 2023, "begins at the unsealing of the indictment" on November 2, 2023 and therefore that those charges will have been pending against Wong for only 220 days at the time trial commences on June 10, 2024, which is insufficient to trigger any further *Barker* inquiry. (*See* Doc. 217, at 44-45).

    The issue of whether a Defendant's constitutional speedy trial rights are only triggered after an indictment has been unsealed is unresolved within the Circuit Courts. As explained by the Sixth Circuit,

> this Court has implied that the speedy trial right is triggered by the filing of *any* indictment, whether sealed or not sealed. *See, e.g.,* [*United States v. Watford,* 468 F.3d 891, 901 (6th Cir. 2006)] ("We have recognized that in most cases, the triggering event will be the filing of an indictment."). In [*United States v. Jackson,* 473 F.3d 660 (6th Cir. 2007)], this Court considered a speedy trial challenge based on "the delays between the issuance and unsealing of the indictment and [defendant's] trial." *Jackson,* 473 F.3d at 664. Just as here, in *Jackson* the total, post-sealed indictment delay was greater than one year but the pre-unsealed indictment delay was less than one year. *Id.* at 663. This Court explicitly recognized the distinction between pre- and post-unsealed indictment delay, but did not find that only post-unsealed indictment delay must be considered. *Id.* Moreover, the First, Fifth, and Eleventh Circuits have all rejected a bright-line rule and instead, in accordance with the Supreme Court's multi-factor balancing approach in *Barker,* have held that delay while an indictment is sealed may be considered. *United States v. Casas,* 356 F.3d 104, 112-13 (1st Cir. 2004); *United States v. Bergfeld,* 280 F.3d 486, 489 (5th Cir. 2002); *United States v. Hayes,* 40 F.3d 362, 365 (11th Cir. 1994).

*United States v. Williams*, 231 F.App'x 457, 463 n. 6 (6th Cir. 2007). *But see*, *United States v. Lewis*, 907 F.2d 773 (8th Cir. 1990) ("The general rule is that speedy trial rights do not attach in instances when the indictment is sealed unless the defendant is aware of the indictment or the record indicates intentional delay on the part of the prosecution."). Neither the Government nor Defendant Wong cite to any case law in the Third Circuit which demonstrate that this Circuit has explicitly resolved this issue.

    Here, as noted by the Government, if this Court were to determine that the relevant time period for Sixth Amendment purposes began at the unsealing of the indictment, then approximately seven months will

therefore weighs against Wong.

With respect to the second *Barker* factor, reason for the delay, the Government

"bears the burden to justify the delay," *Hakeem,* 990 F.2d at 770.

> *Barker* grouped possible reasons for delay into three categories. A deliberate
> effort by the Government to delay the trial "in order to hamper the defense"
> weighs heavily against the Government. *Barker,* 407 U.S. at 531, 92 S.Ct.
> 2182. A "more neutral reason such as negligence or overcrowded courts" also
> weighs against the Government, though "less heavily." *Id.* This is because
> "ultimate responsibility for such circumstances must rest with the
> [G]overnment," since it is the Government's duty to bring a defendant to trial.
> *Id.* at 527, 531, 92 S.Ct. 2182. Finally, "a valid reason, such as a missing
> witness, should serve to justify appropriate delay." *Id.* at 531, 92 S.Ct. 2182.

*Battis*, 589 F.3d at 679-680.

In turn, "delays attributable to the dilatory actions of the defendant cut against a

finding of a Sixth Amendment violation." *Hakeem*, 990 F.2d at 766. *See also*, *Battis,* 589

F.3d at 680 ("By contrast, 'delay caused by the defense weighs against the defendant' . . .")

(quoting *Vermont v. Brillon,* 556 U.S. 81, 90 (2009)).  This "rule accords with the reality that

defendants may have incentives to employ delay as a 'defense tactic': delay may 'work to

the accused's advantage' because 'witnesses may become unavailable or their memories

---

have passed by the time of Wong's June 10, 2024 trial.  Conversely, if the Court were to find that all time following the filing of the First Superseding Indictment in June of 2023 should be counted, this results in slightly less than a one-year delay.

    In light of the unresolved nature of when the constitutional speedy trial clock begins to run where an indictment has been sealed for a significant amount of time prior to its unsealing, and where, if the Court did count the time as of the date of the filing of the First Superseding Indictment, this time period would be approaching one year and therefore presumptively prejudicial, out of an abundance of caution, the Court will assume that the *Barker* inquiry has been triggered as to all Counts in the First Superseding Indictment, and not only those which were carried over from the Indictment in *Wong II*.  The significantly shorter delay for the new counts, however, is taken into account in balancing the other *Barker* factors.

may fade" over time.'" *Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 521). *See also*, *United States v. Loud Hawk*, 474 U.S. 302, 316-317 (1986) ("'Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon.'") (quoting *United States v. Auerbach,* 420 F.2d 921, 924 (5th Cir. 1969)).

In evaluating the second *Barker* factor, a court should subtract the amount of delay caused by the defendant from the delay caused by the Government. *Battis*, 589 F.3d at 680. Generally, in a multi-defendant indictment, "[d]efendants bear the responsibility of delay caused by their co-defendants, and such delay cannot be attributed to the Government." *United States v. Thompson*, 716 F.App'x 69, 72 (3d Cir. 2017) (citing *Claxton*, 766 F.3d at 295 ("[T]hat delay was excusable as a result of the myriad [of] motions and appeals filed by [defendant] and his co-defendants. Such excusable delay is subtracted from the delay attributable to the government.")).

In the present case, Wong asserts that the time "fairly attributable" to him in *Wong II* is 364 days and that no time is attributable to him in *Wong III*. (Doc. 214, at 18). Although conceding that his co-defendants caused additional delay, Wong reasons that he is only responsible for "only slightly more than thirty-six percent of the time" between the first indictment in *Wong II* and the trial scheduled to commence on June 10, 2024. (*Id.*). Wong argues that there are "numerous periods of delay in this matter solely caused by the Government", but points to the "most egregious" time span of June 21, 2023, through

November 14, 2023, "for a total of one-hundred-and-forty-six (146) days." (*Id.* at 19). Wong further asserts that the period of time between March 24, 2023, and June 21, 2023, a total of 89 days, must also heavily weigh against the Government. (*Id.* at 21).

As previously stated, the large majority of the time from the filing of the Indictment in *Wong II* in September of 2021 until the dismissal of the case against Wong in November, 2023, was the result of numerous pre-trial motions by both Wong and his co-defendants. Despite Wong's apparent belief that it is unfair that his co-defendant's motions affect his constitutional speedy trial rights, the law is clear that this time cannot be attributed to the Government. It is of note that, despite Wong's stated frustration with not going to trial in a sufficiently quick time, at no time did he move to sever in *Wong II* or, prior to his *pro se* filing in November of 2023 (*see* 3:21-cr-271, Doc. 243), assert his right to a speedy trial.

Furthermore, in *Wong III*, all time from the date of Wong's arraignment on November 14, 2024, until the time of trial on June 10, 2024, was excluded under the Speedy Trial Act. None of this time was excluded at the request of, or upon motion by, the Government, but rather was the result of a number of pre-trial motions to extend the time to file pre-trial motions by Wong's co-defendants, as well as this Court's orders excluding time from the Speedy Trial Act and scheduling trial. Thus, although Wong correctly notes that he did not personally request any extensions of time in *Wong III*, the excluded time cannot be attributed to the Government. *See e.g. Thompson*, 716 F.App'x at 72. Once again, the Court notes that Wong never requested severance in *Wong III* and, following his formal

"Objections" to any further continuances of time in February of 2024, no continuances past the already scheduled March 21, 2024 pre-trial deadline were allowed.

The Court turns to the two time spans upon which Defendant focuses in support of his argument that at least 235 days must be heavily weighed against the Government; specifically, the period of March 24, 2023, through June 21, 2023 (89 days) and the period of June 21, 2023, through November 14, 2023 (146 days).  (Doc. 214, at 19, 21).

First, even assuming all those days must be attributed to the Government, and further assuming that there are several other shorter periods that should be attributed to the Government, this time attributable to the Government still amounts to less than one-third of the 999 days that Wong claims should be counted toward his speedy trial calculation. Further, while Wong's calculations may be reasonably asserted with respect to the counts which were first brought in *Wong II*, where the Superseding Indictment in *Wong III* was not filed until June 21, 2023, Wong's argument that his constitutional speedy trial rights as to the new counts were violated by actions taken by the Government prior to June 21, 2023 carries little weight.[17]

---

[17] Wong's brief in support of his motion to dismiss implies that the Government could have brought all of the claims contained in the Superseding Indictment in *Wong III* at the time it filed *Wong II*.  (*See e.g.* Doc. 214, 9-11).  Wong nonetheless does not set forth any plausible argument that the Government was required to do so.  Although frustrating to both Defendant and this Court, as experienced Defense counsel is aware, it is not unusual for the Government to add charges in a Superseding Indictment which include conduct that also occurred at or around the same time as the charges in the original indictment.  *Cf. e.g.*, *United States v. Goodwin*, 457 U.S. 368, 382 (1982) ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. . .  [T]he initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.").

The Court finds Wong's assertions as to the first time span at issue – March 24,

2023 to June 21, 2023 – to be without merit.  On March 24, 2023, the Court in *Wong II*

made a docket annotation which stated: "The trial scheduled to begin on Monday, March 27,

2023 has been continued at the oral concurred in request of the Gov't based on Defendant,

Joushton Rodriguez having been apprehended in the Eastern District of PA. In the interest

of justice, the Court has granted the request of the Gov't. New date will be forthcoming."

(3:21-cr-271, Dkt. annotation of March 24, 2023).  On April 19, 2023, Defendant J.

Rodriguez having been arraigned, the Court scheduled trial as to Defendants J. Rodriguez,

S. Rodriguez, and Wong to commence on June 26, 2023.  (*See id.* at Docs. 222, 223).

Although Defendant Wong admits that he concurred in the Government's request to

continue the March 27, 2023 trial, he states that he "did not consent as a result of a Co-

Defendant being arrested at the last minute, but rather based upon the representations of

the Government that additional charges were going to be filed based upon other robberies

they believed Wong to have been involved in" and that "at that point, rather than facing the

prospect of another jury trial, [Wong] agreed to the continuance so that all of the charges

that were going to be brought against Wong would be consolidated into a single indictment

which would necessitate one jury trial."  (Doc. 214, at 7 n.3 & 21).  Strangely, while

admitting that he concurred in the Government's motion because he wanted only one trial,

wherein all the charges against him would be tried at the same time, Wong argues that the

period of delay from March 24 until June 21, 2023 "weighs strongly against the

Government" because Wong's case could have proceeded to trial on March 27, 2023, and that the Government made a "value judgment . . . in wanting to have the two cases tried together." (Doc. 214, at 21). In fact, Wong himself also made a value judgment, to wit, that he wanted to only go to trial once. The fact that the Government and Wong ostensibly had different reasons for wanting the March 27, 2023, trial continued does not mean that the period of delay at issue should weigh "heavily" against the Government. Furthermore, had Wong wanted to go to trial on March 27, 2023, he could have not concurred in the Government's request and instead asked the Court to sever his case from those of his co-defendants, including J. Rodriguez. Finally, the delay in the trial of all defendants was caused by J. Rodriguez's arrest on March 22, 2023, in the Eastern District of Pennsylvania (see 3:21-cr-271, Doc. 203, at 2). The Government did not have control over this timing, nor could the Government reasonably expect that J. Rodriguez could proceed to trial commencing on March 27, 2023. As a result, this time period is not attributable to the Government.[18]

Most concerning to the Court is the second time period identified by Wong: June 21, 2023, through November 14, 2023. As previously explained when addressing the Speedy Trial Act, at minimum, 108 days were not statutorily excludable in *Wong II* during this time.

---

[18] Even if this time period could be attributed to the Government, it would not weigh "heavily" against it as Wong asserts.  There is no indication that the delay was caused by a "deliberate effort by the Government to delay the trial in order to hamper the defense", *Battis*, 589 F.3d at 679, but rather by a desire to have all defendants tried at the same time.  Wong's concurrence in the motion to continue, albeit on a different basis, and admission that he also wanted to continue the trial, further supports a finding that the time cannot be heavily weighed against the Government.

Assuming, without deciding, that the time in *Wong III* from June 21, 2023 to Wong's arraignment on November 14, 2023, were also not constitutionally excludable, Wong is correct that approximately 146 days should be counted against the Government. Furthermore, this time heavily counts against the Government as to all counts in the Superseding Indictment.

The Government offers no plausible or reasonable explanation for its failure to request that the time period in *Wong II* from June 21, 2023, until the dismissal of the charges against Wong in November of 2023 be excluded for speedy trial purposes. Although at this time, a superseding indictment had been filed in *Wong III* charging Wong with the same offenses, this fact was unknown to Wong and not disclosed to him until several months later. The fact that the Superseding Indictment in *Wong III* was sealed provides no excuse for the Government keeping Wong, and his co-defendants, in an indeterminate state in *Wong II* as to the charges they believed were currently pending against them in that case. Nor has the Government adequately explained why it failed to disclose the Superseding Indictment in *Wong III* to Wong's counsel at an earlier time. The fact that this indictment was sealed provides only a thin veil of justification. On the record currently before the Court, it appears that counsel for Wong emailed the current counsel for the Government on September 27, 2023, requesting an "update" on "USA v. Wong", to which the Government immediately responded stating that Wong's case was consolidated into *Wong III* and asking whether Wong had been arraigned on the Superseding Indictment

in *Wong III*.  When Wong's counsel stated that he was not aware of any Superseding

Indictment, Government's counsel stated that he would "look into why nothing moved on

this earlier."  (*See* Doc. 214-2).  This exchange confirms that the Government both believed

that Wong could be arraigned prior to the unsealing of the Superseding Indictment in *Wong*

*III*, had not been diligent in following the progression of this case in so far as it had Wong, S.

Rodriguez, and J. Rodriguez in custody and could have requested their arraignment at any

time after June 21, 2023, and had no legitimate reason to delay Wong's knowledge of the

new charges or to delay his ability to begin preparing for trial as to both the old and new

charges.[19]

Although the Court recognizes the multi-month delay attributable to the Government

wherein Wong was subject to charges in both *Wong II* and *Wong III*, and in no way

condones the Government's actions and inactions in perpetuating this delay, the second

*Barker* factor nonetheless does not weigh in favor of Defendant.  With respect to the

charges first alleged in *Wong II*, which the Court has already found must be dismissed

---

[19] Current counsel for the Government only entered his appearance on August 29, 2023, due to prior Government counsel withdrawing from the case and leaving the U.S. Attorney's Office in the Middle District of Pennsylvania.  Current counsel for the Government also appears to have timely and honestly responded to Wong's counsel's inquiries.  Thus, although current Government counsel bears some responsibility for the delay in notifying Wong of the existence of the Superseding Indictment and ensuring his arraignment on the new indictment, the Court emphasizes that the large majority of the fault lies with previous counsel for the Government, who not only needlessly complicated *Wong I, II,* and *III*, but also appears to have purposely concealed, and misled, Wong's counsel as to the existence of the Superseding Indictment in *Wong III*.  Nonetheless, regardless of the allocation of fault, it is evident that the time from June 21, 2023 until Wong's arraignment on November 14, 2023 heavily weighs against the Government.

without prejudice due to a violation of the Speedy Trial Act, even weighing the 146 days

heavily against the Government, and accepting that there may be other brief delays in

*Wong II* which may be attributed to the Government, this delay only accounts for less than a

fifth of the delay in proceeding to trial in *Wong II*. Rather, as previously discussed, the large

majority of the delay in *Wong II* was the result of the myriad of motions and continuances

requested by Wong and his co-defendants. As to the charges first alleged in *Wong III*,

assuming the constitutional speedy trial clock began to run on June 21, 2023, and having

already determined that the Government did not cause any delay following Wong's

arraignment on November 17, 2023, the Government is responsible for 146 days of delay

out of the 356 days that will have elapsed as of the commencement of trial on June 10,

2024.[20] Approximately 41% of the delay is therefore attributable to the Government as to

these new charges. Although this is a significant percentage of time attributable to the

Government, and in another case may cause the second *Barker* factor to weigh heavily

against the Government, that is not the case here. Rather, the entire period of delay

attributable to the Government consists of one isolated incident at the commencement of

the case against Wong and does not reflect a pattern of delay. In addition, this period of

delay would most likely have still occurred due to the outstanding arrest warrants for Zeidan

---

[20] Clearly, if the constitutional speedy trial clock did not begin to run until the Superseding Indictment was unsealed on November 3, 2023, as argued by the Government, then only 14 days of delay can be attributed to the Government. This delay would not weigh heavily against the Government where it was merely the result of the time it took for the Court to schedule, and arraign, Defendant, principally the result of "overcrowded courts".

and Lysakowski. Further, even accounting for the delay, Wong is still scheduled to go to trial less than one year after he was indicted in this case. As a result, the second *Barker* factor does not weigh in either party's favor and is best characterized as neutral.

The third *Barker* factor requires a Court to determine whether the defendant asserted his right to a speedy trial. "Whether and how a defendant asserts his right [to a speedy trial] is closely related" to the other *Barker* factors. *Barker*, 407 U.S. at 531. Thus, the strength of a defendant's efforts to assert his right "will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531. "[T]he point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing." *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976) (citing *Barker*, 407 U.S. at 531).

Here, Defendant Wong wrote a *pro se* letter in *Wong II*, filed November 16, 2023, stating in relevant part that "the Speedy Trial Clock ran out." (3:21-cr-271, Doc. 243). In *Wong III*, on December 8, 2023, Wong filed a *pro se* "Notice", asserting a list of "illegal misconduct", including that "my speedy trial rights have also been violated" (Doc. 173) and on February 12, 2024, his counsel filed an "Objection to Trial Continuances and Invocation of Defendant's Right to a Speedy Trial" (Doc. 188) wherein he stated that "Defendant is prepared to go to trial and is specifically invoking his speedy trial rights under the Speedy Trial Act and the Sixth Amendment to the United States Constitution" (*id*. at ¶ 43).

While it is evident that Wong did assert his right to a speedy trial, he first did so in *Wong II* through a *pro se* letter filed approximately two years after he was indicted and well after the Speedy Trial Clock had already expired as to the counts in the indictment in that case. Where Defendant claims that "the most significant failures of the Government to accept any responsibility for the unnecessary delay in this case are from the periods of time between March 21, 2023, and June 21, 2023, and between June 21, 2023, and November 20, 2023" (Doc. 252, at 2), the fact that Defendant only first asserted his Speedy Trial Act rights in November of 2023 mitigates the weight of the assertion of his rights. As stated in *Palmer*, "[t]o the extent that promptness in asserting the right is important, then [a defendant's] silence . . . works against him because it suggests that any hardships he suffered were either minimal or caused by other factors." *Palmer*, 537 F.2d at 1288; *see also United States v. Vasquez-Uribe*, 426 F.App'x 131, 138 (3d Cir. 2011) (third *Barker* factor weighed against the defendant when first formal assertion of right to speedy trial did not come for more than one year after initial appearance).

In *Wong III*, Defendant's December, 2023, *pro se* "notice" and counsel's subsequent "Objection" in February, 2024, both clearly assert a right to a speedy trial.[21] These filings aid Defendant in arguing that his constitutional speedy trial rights have been violated as to

---

[21] At the time that Defendant Wong filed his "Objection", asserting that he "formally protest[s] any current and future extension of time and/or continuance in this matter" (Doc. 188, ¶ 35), the date for the filing of pre-trial motions by a co-defendant was March 21, 2024. Notably, the time for the filing of pretrial motions was never extended past that time and, on March 22, 2024, the Court scheduled trial in this matter to commence on June 10, 2024 (Doc. 200).

the counts in *Wong II* which were subsequently brought against him in *Wong III*.  However,

as to the counts first alleged in the Superseding Indictment in *Wong III* on June 21, 2023,

Defendant's invocation of his speedy trial rights is neutral where he is scheduled to go to

trial less than one year after the filing of the *Wong III* indictment and there has been no

evidence of a Speedy Trial Act violation as to these counts.

As a result, the third *Barker* factor weighs only slightly in Wong's favor.

Finally, the Court turns to the fourth *Barker* factor: prejudice to the defendant.  With

respect to this factor, "the burden of showing prejudice lies with the individual claiming the

violation and '[the] possibility of prejudice is not sufficient to support [the] position that ...

speedy trial rights [are being] violated.'"  *Hakeem*, 990 F.2d at 760 (quoting *Loud Hawk*, 474

U.S. at 315).

A defendant can establish prejudice in two ways.  "A defendant can establish specific

prejudice by showing that he was subject to 'oppressive pretrial incarceration,' that he

suffered 'anxiety and concern' about the impending trial, or that his defense was impaired

as a result of the delay."  *Battis*, 589 F.3d at 682 (quoting *Barker*, 407 U.S. at 532).  A

defendant can also "claim prejudice without providing 'affirmative proof of particularized

prejudice'" because "'consideration of prejudice is not limited to the specifically

demonstrable.'"  *Id.* (quoting *Doggett*, 505 U.S. at 655).  With respect to this second way to

establish prejudice:

> Given that "time's erosion of exculpatory evidence and testimony" can hinder a
> defendant's ability to prove that his defense was impaired by a delay, the

> [*Doggett*] Court stated that "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655-56, 112 S.Ct. 2686. This presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government "affirmatively prove[s] that the delay left [the defendant's] ability to defend himself unimpaired."

*Id.*

Here, Wong asserts that he suffered specific prejudice because he has been subjected to "oppressive pretrial incarceration" and that he has suffered "anxiety and concern about [the] pending trial", which has been heightened by the Government's "dilatory tactics". (Doc. 214, at 26-27).  However, prejudice resulting from anxiety and concern cannot be based solely on a general claim of anxiety.  As explained by the Third Circuit,

> [v]ague allegations of anxiety are insufficient to state a cognizable claim. In *United States v. Dreyer*, 533 F.2d 112 (3d Cir. 1976), we held that a defendant must show that his anxiety extended beyond that which "is inevitable in a criminal case." *Id.* at 116. In order to reach that level, the petitioner must produce evidence of psychic injury. *See id.* at 115-16.

*Hakeem*, 990 F.2d at 762.

Contrary to Defendant's assertion otherwise, the Court does not find that his anxiety and concern are apparent based on the grounds identified.  He presents no more than vague allegations of anxiety and has produced no evidence of psychic injury as necessary to make the showing required under this prong of prejudice.  *See Hakeem*, 990 F.2d at 762.

Wong further claims that his physical health has suffered since his incarceration, and specifically that he "nearly died in prison, having suffered strokes and having ongoing,

uncontrolled high blood pressure for a period of three years." (Doc. 214 at 27). Wong's

argument of specific prejudice here fails for a simple fact. Regardless of the existence of

the charges in *Wong II* and *Wong III*, because he was first incarcerated in *Wong I*, wherein

he pleaded guilty to being a felon in possession of a firearm and was sentenced to a term of

imprisonment of 41 months, Wong would nonetheless have been incarcerated until May of

2024, which is approximately one month prior to the commencement of trial in this case.

Arguably the only difference would have been the location of his incarceration had he not

been facing new charges in *Wong II* and *Wong III*. Wong does not argue, or present any

evidence, that absent his incarceration in Lackawanna County Prison, he would not have

suffered the same physical health issues, including high blood pressure and one or more

strokes. Nor has Wong demonstrated that he faced any substandard conditions or other

oppressive factors or conditions as compared to those generally faced by other detainees.

*See Hakeem*, 990 F.2d at 761 (pre-trial detention, coupled with a fourteen-and-one-half

month delay, does not permit "an automatic inference of enough prejudice to balance that

factor in a [Defendant's] favor without proof of sub-standard conditions or other oppressive

factors beyond those that necessarily attend imprisonment."); *Claxton*, 766 F.3d at 737-738

("[Defendant] has given no indication that he faced substandard conditions as compared to

those generally associated with the transfer of prisoners. . . .").

Defendant further argues that he has suffered presumptive prejudice due to the

length of delay in proceeding to trial, with "the Government[] bearing the lion's share of this

delay." (Doc. 214, at 26). Preliminarily, as previously noted, with respect to the counts first alleged in the Superseding Indictment in *Wong III*, those charges have been pending for less than one year. This time period is not excessive and is insufficient to establish presumptive prejudice. *See Hakeem*, 990 F.2d at 764 ("On this record, we think that the fourteen and one-half months that passed between arrest and trial is insufficient to allow an inference of prejudice solely from the length of the delay. Its magnitude is too small to itself increase the factor of prejudice to a quantity that will perceptively weigh the balance we must make in Hakeem's favor."). Defendant's arguments are also without merit with respect to the charges that this Court has found must be dismissed for violations of the Speedy Trial Act. Although approximately 33 months will have passed between the date of the first Indictment in *Wong II* in September, 2021, and Defendant's trial on June 10, 2024, even assuming this creates some presumptive prejudice as to Counts 1, 4, and 5, of the First Superseding Indictment, contrary to Defendant's assertions, there is significant evidence that Wong created or acquiesced in a number of the delays, thereby mitigating this presumption.

For the reasons previously explained, Defendant has failed to establish specific or presumptive prejudice by the length of the delay in commencing trial. *See Doggett*, 505 U.S. at 655-656 (Because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify", presumptive prejudice "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria. . .

."). The approximately 33-months which have elapsed, by itself, is insufficient to support a finding that Defendant's Sixth Amendment right to a speedy trial has been violated. *See also*, *Battis*, 589 F.3d at 683 (recognizing that fourteen-month period between arrest and trial is insufficient to establish presumptive prejudice, but holding that prejudice will be presumed where there is a forty-five month delay in bringing defendant to trial).

Therefore, the Court finds that the fourth *Barker* factor does not weigh in Wong's favor as he has not established that he suffered specific prejudice or that he is entitled to a presumption of prejudice due to the delay in commencing trial in this matter.

As a result of the above-explained analysis, in balancing the *Barker* factors, the length of the delay and the prejudice factors both weigh in the Government's favor. However, Wong did assert his speedy trial rights such that this factor weighs in Wong's favor, however slightly, and the reason for the delay does not weigh in either party's favor. Nevertheless, a significant portion of the delay in this case was attributable to Wong's own conduct and the conduct of his co-defendants, and he has not established that he has suffered specific or presumed prejudice. Thus, in weighing the *Barker* factors, the balance weighs in favor of the Government, and Wong has failed to demonstrate that his Sixth Amendment speedy trial right was violated.

## IV. CONCLUSION

For the reasons set forth herein, Defendant Steven Wong's "Motion to Dismiss for Violation of Defendant's Right to Speedy Trial" (Doc. 213) will be granted in part and denied in part, as set forth herein. Specifically, Counts 1, 4, and 5 of the First Superseding Indictment (Counts 1, 3, and 4 of the Second Superseding Indictment) will be dismissed without prejudice based on a violation of the Speedy Trial Act. Defendant's motion is denied in all other respects.[22] A separate Order follows.

Robert D. Mariani
United States District Judge

---

[22] Defendant's Motion also requests, in cursory fashion, that "an evidentiary hearing be held on this matter so that a record may be established regarding reason for delay and actual prejudice." (Doc. 213). Where the record is clear as to the procedural histories of *Wong I, Wong II,* and *Wong III,* and the reasons for the delays in *Wong II* and *Wong III* are sufficiently apparent from the record, a hearing is unnecessary and Defendant's request appears to be a fishing expedition for information to establish bad faith by the Government in prosecuting him or malicious prosecution by the Government, without a sufficient factual or legal basis for such an accusation. However, the Court's decision in this memorandum opinion, and to not hold a hearing on the motion to dismiss decided herein, should not be interpreted by any party as expressing an opinion as to the merits of Defendant's pending Motion to Dismiss Count 6 of the Second Superseding Indictment (Doc. 264), which raises concerning issues separate from those addressed here.